Good morning. Good morning. I'd like to reserve two minutes for a rebuttal. Okay. You may, but just keep an eye on the time. All right. So there are two main issues in this case where the I.J. first I.J. The I.J. found that the petitioner didn't mention that she was groped. She was groped, but on her I-589, she mentioned on AR-536 that she was harassed as well as monitored by the police and supervised. She was harassed. Let's look at the facts. It's my understanding that she went. She was only into this problem because of religious prosecution, right?  And the first time with the first incident, there was a male police officer who interrogated her the day before she came into the room. And then he started to get close to her and started to take her clothes off and was feeling her breasts and her private parts. Is that correct? Yes, Your Honor. So that, in fact, given what that's, that sounds like sexual assault, right? Yes, that is the first instance which was in her. Yeah, that's the first instance. And the second incident, the same police officer again touched her body parts with his hands. And since there were other government officials in the room, he didn't do much more than that. That's her statement, right? Yes, Your Honor. And that's also sexual assault, isn't it? Yes, but it could also be characterized. Isn't it sexual assault? It could be characterized as a sexual assault or sexual harassment, I think. But so it wasn't necessarily wrong for the IJ and the BIA to suggest that they were sexual assaults, right? Yes, but the question... And didn't your client also have the job of, in an application, suggesting, have you, your family or close friends or colleagues ever experienced harm or mistreatment or threat in the past by anyone? And she did not list the second incident. Your Honor... Is that true? Your Honor, she listed... Is it true that she didn't list the second incident? She listed the second incident as a harassment in her I-589 on her I-589 report. But the affidavit only says one assault. Yes. By the police officer at the police station. Never mentions any other touching when she reported to the police station every week, right? Isn't that true? She mentioned that she was... Is it true that that's what she did? It's true that it's... I mean, all I'm trying to do is say, here we got this evidence, the IJ had it, the BIA had it, and now I have it. And it seems to me that based on what I've laid out here, there's no way I can say substantial evidence doesn't sustain what the BIA and the IJ did. Your Honor, the... Well, let's talk about the explanation. What did your client say to explain? She said that she was told not to write a... She said an assistant in her former lawyer's office told her not to list too many details. Come on. Would your... Would your office tell her not to list these details? No, Your Honor, but my office will also not have a... I know your office wouldn't, but the thing that bothers me about this is I'm looking now for substantial evidence. And it seems to me that her explanation was just outlandish given what she's got to say and why it's going to help her. Mr. Lee, the... Does the... Your client has a religious persecution claim, not a sex-based persecution claim. Do the sexual assault or harassment incidents go to the heart of that claim, and should that matter? No, they do not. The core of the claim is that she is not... She was not permitted to practice her religion because when she did, by going to house churches, she was arrested, detained, harmed in various ways, beaten. Well, why shouldn't this inconsistency at least serve as substantial evidence for an adverse credibility determination? First, it's... First, there's a case in this circuit, Parasamy, which in similar circumstances showed that when the incident of sexual assault was brought up at the hearing, it was... It was not... It did not go against the petitioner. It was not... It did not go against petitioner's credibility because delayed reporting of sexual assault is very normal as the court found in that case. But isn't it true that Allum says that the claim need not go to the heart of the claim? That what we're really looking at is what is happening and whether it was, in fact, a lie, that she didn't do it the first time? And then we look at what else there is. Even though... And she didn't go in here because she was going after a sexual claim. She only went to police station because it was a religious persecution. It's part of a religious persecution claim, right? Yes, but that's just an omission that doesn't go to the heart of the claim, not an inconsistency that does. Well, but just a minute. Let's... It doesn't need to go to the heart of the claim. You'll agree with that, right? It does not, but also... Allum says it doesn't need to, right? Yes, Your Honor. And then let's go to the next one. Let's talk about her change of address. She was told that she was... She reported her address in Honolulu. She knew she had to report this new address. She knew she couldn't change her address without the permission of the officers. She was only released on her own recognizance because she would give them the change of address. And then she admits she went to Hawaii or Maui and started paying rent. And she did not tell anybody. Your Honor, she did tell the immigration officers of her change in address and... Well, she told them about Kona, but Maui, she didn't tell anybody. And the EOIR 33 instructions say that you must follow this form with the immigration court with the change of your contact information or receipt of a charging document with incorrect contact information. So you're saying that all she had to do is give an address anyplace as long as she could fly back immediately and get there? Your Honor, I'm saying that she was... Was that what the judge asked her to do? She was receiving the court documents as required and thus her lack of filing an EOIR 33C shouldn't go to her credibility. Well, I'm certainly not an IJ and I'm certainly not the one who gave her that responsibility. But I remember being on the district court and having probationers who I wouldn't let out of jail unless they told me what their address was and unless they told me when they were going to move and what they were going to do. And if they didn't, they went back to jail. And this is the same circumstance. And this lady didn't tell. She just went to Maui and thought, well, I'll fly back when I need to. Now that isn't what the judge asked her to do, is it? Doesn't that go to her credibility? I don't think it does, Your Honor, because it's just a technical issue and the instructions for the EOIR make her actions legitimate, Your Honor. She was in contact with the court and the court was receiving... And she was receiving all the documents that she needed to and she was going to the immigration court at the time. She did not miss a hearing. Is there any evidence that she was attempting to deceive the IJ or anyone else? No, there is no evidence. And, in fact, the IJ also found that nothing in her demeanor detracted from her credibility. So, Your Honor, I mentioned Allum, but Allum also says that you have to look at the totality of the case, which includes not cherry-picking only facts that go towards an adverse credibility determination under Shrestha. All right, we've used up most of your time, but we'll give you two minutes for rebuttal. All right. Thank you, Your Honor. May it please the court, Your Honors, Joanna Watson, on behalf of the government. Looking at the totality of the circumstances here, which is what we do, you would discuss Allum. The record does not compel reversal of the agency's adverse credibility determination. I mean, it was a glaring error of the court's judgment It was a glaring omission in the asylum application and in her statement that she had Why was it glaring? I mean, this is not a claim about sex-based persecution. It's a claim about religious persecution, right? And the gravamen of the persecution theory is that she was arrested and told, like, you have to stop going to this church. Like, that's the core of the religious persecution claim, and this has nothing to do with that, does it? It absolutely does. I mean, this case turns on the lack of credibility of petitioner. Okay, but that's question-begging, right? Because you're saying she's not credible because this omission, like, is really important. And the question is, like, what does the omission have to do with the religious persecution theory? Because you have to, in order to meet her burden of proof for asylum, she has to show that the harm that she experienced rose to the level of persecution. And while that was not an issue here, her credibility was, I mean, it's a glaring omission, and it bolsters her claim when she gets into I guess the point of my question, which I think you still haven't answered, is why does she She doesn't need this to establish a religious persecution claim, and I'm not sure how it really moves the needle at all on religious persecution. Like, the theory of persecution is you're arrested and told, like, you can't go to the church you're worshiping at anymore. Isn't that sufficient to establish persecution? Not in and of itself. Ms. Watson, did she rely on the second assault for her claim? She did. She raised it for the first time before the immigration judge during the hearing. Well, I think in terms of the theory of her persecution, so it came up during the hearing, right, when, of course, we're also trying to establish credibility. But not in the affidavit declaration application. It doesn't seem to, nothing on the merits in the briefing here seems to turn on it. So, just that it came up during the hearing. Correct. It was omitted from her asylum application and her statement. I mean, these are significant details, like I said, that would go to because persecution is an extreme concept that requires, you know, more than just being presented. So it's the government's position then that, you know, but it seems like so that that would be the second assault that in terms of her relying on it in order to establish a religious persecution claim, that the second assault would be essential to determining nexus on the basis of religion. I mean, it just doesn't seem, as Judge Miller says, that it's any part of any of that. Under the totality of the circumstances, under post-real ID cases that we have here, you can rely on anything. It doesn't all have to go to the heart of the claim, but this goes to the heart of the claim that she was. So it doesn't matter whether it goes to the heart of the claim. Your backup is that, okay, now this is in the mix under real ID, so it's part of the totality. Exactly. And then it's just an omission of this encounter following the second encounter. That's pretty significant because it bolsters her claim that she was persecuted by leaving out a second. Well, that takes us back to whether it's actually, it's the government who's claiming that it's the heart of the claim. If it isn't, then it's just part of the totality. Correct. But in this claim, isn't it so that he must show that she was religiously persecuted? And in order to show that, she's got to have credible testimony about that religious persecution, and the IJ is trying to determine if it's credible. And therefore, the IJ looking at what she did in pursuit of her religious persecution claim finds she wasn't credible in saying the things that she said. So therefore, it seems to go right at whether she was persecuted or not. Because if she can't show she's credible, how can one believe the rest of her story? Isn't that the way it happens? That's exactly the way it happens. And then when you look at the other factors here. Okay, but can you address our decision in why, which I read to say that omissions are less probative of credibility than actual inconsistencies, and that we said the mere omission of details is not a sufficient basis for an adverse credibility finding. So how do you account for that? We're looking at the totality of the circumstances here. And this does go to the heart of her claim. We're going back to that. And if you look at the other factors too, with the not updating her address and the really conspicuous timeline of events here. On the address, do you agree with your friend that it was a request for contact information or that she was asked for her current residence? I mean, she has a duty to update with her current residence. I mean, for notifications from the court. Those are two different things, right? With DHS. Right. So if it's her view that notifications to the court, that she'll get them at this contact information and she might be residing someplace else temporarily or coming back, why is that false? Well, she was several months. And, you know, she had the privilege of being released on her own recognizance. And then she doesn't. And so the request was for her. You disagree then to my question. It wasn't for contact information. It was a request for her residence. And she gave an address that she was not residing in. Yes. She didn't provide the updated address of where she was for several months at a time. Well, and isn't it so that it isn't a matter of her just changing her address? She admits she lived at a different place. She admits she paid rent at a different place. She admits she was at a different place than what she was supposed to have told the judge where she lived, right?  And so I guess I can see how all of that shows a lack of diligence or perhaps a lack of respect for the authority of the court to impose rules that she has to follow. But how does it show a lack of honesty? We're looking at totality. All of these different parts.  I mean, that is true. But how does this contribute in any way to the totality? She wasn't candid, the immigration court, of her current address. I mean, and she admitted that she was. But she didn't lie about it. She just failed to, like, comply with the obligation. Which she had a duty to do. Right. And so I think the question I asked was, that shows a lack of diligence and a lack of respect for the authority of the court to impose rules that she has to follow. But how does it show a lack of honesty? It's not dishonest to just not do the stuff you're supposed to do. It's bad. People should do the things that they're supposed to do. But it's a different kind of problem from dishonesty. It might not be the most relevant of the factors that are being considered. But then when you look at the other factors, too, and here, you know, Ming Dai, the court's job is not to see if it's possible to reach another conclusion. The court's job is to see if the record compels a different conclusion. Because subjective minds can differ. On that, Ms. Watson, with respect to get to the heart of the claim, so the actual asylum case, as I take the record, his testimony or grandmother's note about the arrest, the father's note, all aligned with the country conditions report in terms of the actual religious persecution claim at issue here. Where is the record support for the implausibility finding, the IJ's finding that the board adopts it? That's just implausible. Well, and again, going back to the totality of the circumstances, and you look at- Well, the totality is the totality, but you also can't cherry pick. Correct. And so we have here the only thing, and let me know if I'm wrong, but the only thing that the agency attacks as to the substance of the claim, and I get we're looking at the totality, but you can't cherry pick, is just that it's implausible, where we have three different sources all lining up as to the actual religious persecution that she claims to have suffered. Where on the record should we look to find that that's implausible? Well, I mean, limited weight was provided to these documents. The immigration judge gave limited weight to these documents because they were not originals. Nobody was there for available for cross-examination, and some of the documents kind of contradicted almost or didn't have any of the details that she mentioned as part of her claim. The arrest, the beating, the threats, it being labeled occult, all of those things seem to line up. Well, I mean, the notice that was sent to her says it was handed directly to her from the arrest. I don't think any of us are experts on the Chinese equivalent to Rule 4 of the Rules of Civil Procedure, but I think there could be different pieces there. I'm talking about the substance of it, what the basis of the implausibility reading is to the fact that she was beaten. It was such a small church. It was elderly ladies, and the fact that she was going once a month for this short period of time, that they would come after her at school. Her grandmother would turn her in. Is there anything in the country conditions report or otherwise to show, if I can finish the question, to show that the Chinese government is less inclined to persecute churches where the prisoners are elderly? Well, it talks about, you know, they're more inclined to go over churches that are much, much larger as opposed to these very small churches. I see. But there also, in the country conditions report from 2017, there were a number of reports described about authorities harassing and beating people in small churches as well. And it also discusses, I believe, there are 70 million Christians living in the country, and there are sanctioned churches. This was not one of them, was it? It appears not. Okay. So what is the relevance? If she was found credible, but she's not found credible as to her past persecution. Part of the reason that she wasn't found credible was because of the supposed implausibility. Right. So the basis for the implausibility has to be something other than her lack of credibility. I see what you're saying. And I'd get back to totality again, and there's other factors in here besides the implausibility. Okay. Which was the timeline of events here that line up where she's attending boarding school until January of 2015, but she obtains a passport in September. I think the agency's basis for that implausibility finding is that she was coming here for economic reasons, economic refugee, and the record support for that is? The fact that she never went to school, and she got a visa to go to school, and she's just worked, even though she had talked about the reason that she had gotten her passport, it was because her grades were good, and she was considering coming here in September. And then it's November 2014 is where she's purportedly arrested at the house church. And then in January, she obtains the visa and comes here. But you look at this timeline, it's a bit conspicuous on top to the omissions. And then the evidence how it wasn't able to corroborate. I mean, she has a medical report. She talked about having all these injuries, and she had an IV, and the medical report doesn't talk about any details or any kind of, except that she had bruises. It doesn't go into details. And we talked about the village committee notice. And ultimately, when you look at all of these factors, it doesn't compel reversal of the agency's adverse credibility. I think I'm going over. Yeah, I think we have your argument. Thank you. Thank you. Your Honor, so I found the judge's instructions to her on an AR 130, which is if you ever change your address, fill in a blue form and mail it to a court in five distant states. She didn't say if you ever change your residential address, and she didn't say this was because of her bond. She just said, if you ever change your address, mail in a form. So she didn't change her mailing address. She didn't mail in a form. That might not be the way everybody would understand it, but I think it's a reasonable understanding for her. It's a reasonable understanding if you want to put the gloss on it that you want to put on it. But the bottom line is, is that those who were in charge of the claim and looking at it said, number one, we don't think she's credible for what she's done based on her applications. And we're looking for other things which might add to that. And when we look at what other things which we might add to that, she was told she was supposed to do that, and she didn't. So she was being false about it, that she was not being credible about it. That's the way they looked at it. And I appreciate that I could see it different, but this is substantial evidence review, isn't it? Yes, Your Honor. And so all I've got to find is some evidence to sustain what the IJ and BIA did, right? Yes. We've also said a lot here just recently about the affidavits and letters that were provided from interesting parties, the father, the Votetti's widow, an acquaintance. But we know there's a case called, and this is an Idaho problem, Mukulambutu, whatever that is. It's not the way it is, but that's the way I see it. Where we said right there the BIA did not err in concluding that the evidence that the petitioner provided was entitled to limited weight because the affidavit and letters provided were from interested parties. That's what we have here, interested parties. So, again, the IJ and the BIA are not wrong to give all that limited weight, are they? The IJ and BIA were speculating about, Your Honor. All they did was say, we're not going to give it weight because it's all interested parties and they've never been cross-examined. And now I'm supposed to, on a substantial evidence review, say you're wrong. Substantial evidence? Yes, but the core of the IJ's issue is apparently a speculation about how the Chinese government would provide her a notice, how the Chinese hospital would provide medical reports. And there's no record evidence or testimony about a Chinese civil procedure that would allow her to make these determinations that this is how these things work. And that's the same thing about the EOR 33. There's no evidence that she was deliberately not following instructions when even the instructions for a form say, if you say when you have to fill it out is fill this form out with the immigration court within five working days of a change to her contact information or a receipt of document with incorrect contact information. So this is all just her speculating about the petitioner, about Chinese government's motivations and how they do things. All right. Thank you very much, Mr. Li, Ms. Watson. The case is submitted. Your Honor.
judges: SMITH, MILLER, JOHNSTONE